UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


SUZANNE SHELL,           )    Case No. 1:15CV1757
                              )
      Plaintiff,          )    Magistrate Judge David A. Ruiz
                              )
      v.                   )
                              )
RAY R. LAUTENSCHLAGER,    )    MEMORANDUM
                              )    AND ORDER
      Defendant.       )


The *pro se* plaintiff Suzanne Shell filed suit in this court against *pro se* defendant Ray R. Lautenschlager, as well as against several parties who have since been dismissed. Shell filed her original complaint in this court on August 31, 2015. (R. 1.) With leave of court, Shell subsequently filed an amended complaint on January 19, 2016, alleging copyright infringement against the defendant concerning three works with copyrights allegedly registered and owned by Shell. (R. 15, Am. Compl.) Defendant Lautenschlager filed an Answer on April 13, 2016. (R. 40.)

Currently before the court is plaintiff Shell's Motion for Partial Summary Judgment. (R. 138.) Although Shell's motion was filed before the close of discovery, discovery has since closed, and the dispositive motion deadline, which had been extended to June 30, 2017, has passed. (R. 139, PageID #: 1536.) Shell did not supplement her motion, and no other dispositive

motions were filed.  Therefore, defendant's response to Shell's motion was due on June 1, 2017.

*See, e.g.*, R. 143, PageID #: 1545.  Lautenschlager has not filed a brief in opposition to the

motion, thus the motion is ripe for decision.


# I. SUMMARY JUDGMENT

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  Non-moving parties may rest neither upon the mere allegations of their

pleadings nor upon general allegations that issues of fact may exist.  *See Bryant v.*

*Commonwealth of Kentucky*, 490 F.2d 1273, 1275 (6th Cir. 1974).  The Supreme Court held that:

> . . . Rule 56(c)[1] mandates the entry of summary judgment, after adequate time for
> discovery and upon motion, against a party who fails to make a showing sufficient to
> establish the existence of an element essential to that party's case, and on which that
> party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The evidence need not be in a form

admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing

party:

> to go beyond the pleadings and by [his] own affidavits, or by the "depositions, answers to
> interrogatories, and admissions on file," designate "specific facts showing that there is a
> genuine issue for trial."

*Id.* at 324.

The Sixth Circuit in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989), has

interpreted *Celotex* and two related cases, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986),

---

[1]  Now Rule 56(a).

and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*, 475 U.S. 574 (1986), as establishing a "new era" of favorable regard for summary judgment motions. *Street* points out that the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. *Street*, 886 F.2d at 1479.

The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir. 1990).

The standard is slightly different for a plaintiff-movant, who would bear the burden of proof at trial. Shell must present evidence that would entitle her to a directed verdict if that evidence were not controverted at trial. If the defendant responds to the motion with controverting evidence, which demonstrates a genuine issue of material fact, Shell's motion must be denied. However, if, after analyzing the combined body of evidence presented by both parties, the evidence is such that no reasonable jury could find in favor of the defendant, then summary judgment will be entered on behalf of the plaintiff-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). *See also Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1368-1369 (Fed. Cir. 2006); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (movant must establish all essential elements of claim or defense); *Orozco v. County of*

*Yolo*, 814 F.Supp. 885, 890 (E.D. Cal. 1993); *McGrath v. City of Philadelphia*, 864 F.Supp. 466, 473 (E.D. Pa. 1994) (citing *National State Bank v. Federal Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992)).

Ordinarily, documents submitted to support a summary judgment motion must be attached to an affidavit that both identifies and authenticates each document. *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (citing cases); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994); *Klein v. Manor Healthcare Corp.*, 19 F.3d 1433, 1994 WL 91786, at *6 (6th Cir. 1994) (TABLE, text in WESTLAW); *see generally* Fed. R. Civ. P. 56(c)(1)(A), (c)(4). The exhibits in support of the motion provided by the *pro se* plaintiff here have not been authenticated in the proper manner. *See generally* R. 138. However, when a party fails to object to the evidentiary materials submitted by the other party in support of its motion, any objections to the court's consideration of the materials is waived. *Ford v. Securitas Sec. Servs. USA, Inc.*, No. 08-1262, 2009 WL 2031868, at *3-*4 (6th Cir. July 14, 2009) (citing *Wiley*, 20 F.3d at 226; *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 613 n. 3 (6th Cir.2007)). Lautenschlager has not filed an opposition to the motion for partial summary judgment, nor has he filed any other form of objection to Shell's exhibits, thus any objections to her exhibits have been waived.


## II. COPYRIGHT INFRINGEMENT

The amended complaint alleges three counts of copyright infringement. *See generally* R. 15, Am.Compl., PageID #: 186-192; *see also* R. 138, PageID #: 1406-1422. In a copyright infringement action, the plaintiff must establish "(1) ownership of a valid copyright; and (2)

copying of constituent elements of the work that are original." *Stromback v. New Line Cinema*, 384 F.3d 283, 293 (6th Cir. 2004) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003).

A registration of copyright creates a presumption of the copyright's validity. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004); *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995) (citing 17 U.S.C.A. § 410(c)). Although the presumption may be rebutted, it is the burden of the party challenging the copyright to do so. *Hi-Tech Video*, 58 F.3d at 1095. Lautenschlager has not filed an opposition to Shell's motion, nor has he filed any other document which rebuts the presumption of the validity of the copyrights at issue here.

Not all copying amounts to copyright infringement: "it is a constitutional requirement that a plaintiff bringing an infringement claim must prove 'copying of constituent elements of the work that are original.'" *Kohus*, 328 F.3d at 853 (quoting *Feist*, 499 U.S. at 361). The Supreme Court has noted ". . . originality is not a stringent standard; it does not require that facts be presented in an innovative or surprising way. It is equally true, however, that the selection and arrangement of facts cannot be so mechanical or routine as to require no creativity whatsoever. The standard of originality is low, but it does exist." *Feist*, 499 U.S. at 362. Stated another way:

> "To qualify for copyright protection, a work must be original to its author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." Second, only the expression of ideas, not the ideas themselves, are protectable.

*Ross, Brovins & Oehmke, P.C. v. Lexis/Nexis*, 348 F. Supp. 2d 845, 853 (E.D. Mich. 2004), *aff'd*, 463 F.3d 478 (6th Cir. 2006) (quoting *Feist*, 499 U.S. at 345).

In assessing the infringement claim(s) then, the court must first "filter out the unoriginal, unprotectible elements" – elements that were not independently created by the copyright holder, and that possess no minimal degree of creativity. *Stromback*, 384 F.3d at 294 (quoting *Kohus*, 328 F.3d at 855). The second step is "to determine whether the allegedly infringing work is substantially similar to the protectible elements of the original." *Kohus*, 328 F.3d at 856.

A general claim of copyright infringement is based on strict liability. *King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 852 (M.D. Tenn. 2006). However, damages may be increased if the plaintiff proves that the infringement was willful. *Princeton Univ. Press v. Michigan Document Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996), *cert. denied*, 520 U.S. 1156 (1997) (citing 17 U.S.C. § 504(c)(2)); *King Records*, 438 F. Supp. 2d at 852. "Willful" means "with knowledge that the defendant's conduct constitutes copyright infringement." *Princeton*, 99 F.3d at 1392 (quoting 3 *Nimmer on Copyright* § 14.04[B][3] (1996).)

A defendant's continued infringement after notice of the infringement is probative evidence of willfulness. *International Korwin Corp. v. Kowalczyk*, 855 F.2d 375, 380-381 (7th Cir. 1988) (citing cases); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007) (citing cases); *see also Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) (trademark).

A.  Previous Litigation

In his Answer, Lautenschlager characterizes Shell's allegations as "misleading and false claims."  (R. 40, ¶1, PageID #: 321.)  Lautenschlager contends that "the issues of ownership of

these alleged documents was and has been previously decided in *Shell v. AFRA*[2]."  (R. 40, ¶1, PageID #: 321, citing "*Shell v. AFRA* United State[s] District Court, District of Colorado, 09v00309;" *see also* R. 40, ¶ 87.)

The case which Lautenschlager cites involved "extensive proceedings," *Shell v. Henderson*, Civ. No. 09-CV-00309, 2014 WL 3716165, at *1 (D. Colo. July 28, 2014),  in a suit alleging copyright infringement and other claims brought in the District of Colorado by Shell against several defendants.  *See generally Shell v. American Family Rights Ass'n*, 899 F.Supp.2d 1035 (D. Colo. 2012).  Lautenschlager does not cite the specific ruling or decision which he alleges is dispositive of copyright ownership.  *See generally* R. 40, ¶1, PageID #: 321.

Reviewing several decisions in that litigation *sua sponte*, there is no indication that the Colorado district court issued an adverse ruling on the merits as to Shell's allegations that she held enforceable copyrights.  *See generally Shell v. Swallow*, No. 16-1150, 671 Fed. Appx. 1028 (10th Cir. Nov. 23, 2016); *Shell v. Henderson*, No. 14-1330, 622 Fed. Appx. 730 (10th Cir. Aug. 7, 2015); *Shell v. Swallow*, Civ. No. 09-CV-00309, 2016 WL 183631 (D. Colo. Jan. 15, 2016); *Shell v. Henderson*, 2014 WL 3716165; *Shell v. AFRA*, 899 F.Supp.2d 1035 (D. Colo. 2012). There is also no indication that Lautenschlager was a party in any of those actions.  *Id.*  Thus, this court cannot find that the issue of copyright ownership has been previously adjudicated against Shell.  Lautenschlager's unsupported assertion is not sufficient to rebut the presumption of the validity of the copyrights at issue here.

---

[2]  "AFRA" is the American Family Rights Association.

<u>B. Parents' Guide to the System</u>

The first count of copyright infringement concerns the alleged infringement of a work entitled "Parents' Guide to the System." (R. 15, Am.Compl., ¶¶ 84-87, PageID #: 186-187.) Shell alleges that she registered the original work, a collection of proprietary unpublished documents which formed the basis of the derivative work entitled "Parents' Guide to the System," with the U.S. Copyright Office on October 23, 2008, registration number TXu001588498. (R. 15, ¶ 23, PageID #: 175; *see also* R. 15, Exh. C, PageID #: 220-224; R. 138, PageID #: 1408.)

Shell asserts that she discovered the "Parents' Guide" on the website "www.ohiofamilyrights.info" on August 9, 2015. (R. 138, ¶ 34.a., PageID #: 1411; R. 15, ¶ 86, PageID #: 186; *see* R. 138-3, Exh. 4-5, PageID #: 1461-1484.) Shell contends that Lautenschlager owned the website "ohiofamilyrights.info" at the time of the infringement and was the web master for that site. (R. 138, PageID #: 1410.) In support of her assertion that Lautenschlager owned the website, Shell references an email stream that Lautenschlager incorporated into his Answer, wherein he writes that "the person that you would need to address about content on the Ohio Family Rights website would be me..." (R. 138, PageID #: 1410 n.6; R. 40, PageID #: 342, 345.)

Shell also relies on uncontested requests for admissions. Shell notes that she served Requests for Admissions on Lautenschlager on May 28, 2016, and on December 20, 2016, and that he did not respond to them, nor did he timely object to them. (R. 138, ¶¶ 7-8, PageID #: 1406.)

A party must respond to each matter of which an admission is requested within thirty (30) days after service of the request, or else that matter is considered admitted. *Walsh v. McCain Foods Ltd.*, 81 F.3d 722, 726 (7th Cir. 1996); *Rudder v. Rashid*, 68 F.Supp.2d 813, 816 (E.D. Mich. 1999); *Chicago Dist. Council of Carpenters Pension Fund v. P.M.Q.T., Inc.*, 169 F.R.D. 336, 340-341 (N.D. Ill. 1996) (citing Fed. R. Civ. P. 36(a)). Unanswered requests for admission are automatically deemed admitted under Rule 36(a); no motion to establish or affirm the admissions is required. *Goodson v. Brennan*, No. 16-5023, 2017 WL 1857270, at *2 (6th Cir. May 8, 2017); *American Tech. Corp. v. Mah*, 174 F.R.D. 687, 689-690 (D. Nev. 1997). A district court is empowered to grant summary judgment in a case in which requests for admissions determine dispositive facts. *Elie v. United States*, No. C81-923, 1982 WL 1595, at *2 (N.D. Ohio Jan. 27, 1982) (citing *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686 (2d Cir. 1966)). Matters that are deemed admitted because of a party's failure to respond to a request for admissions can form the basis for a grant of summary judgment. *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007); *Lovejoy v. Owens*, 86 F.3d 1156, 1996 WL 287261 (6th Cir. 1996) (TABLE, text in WESTLAW) (per curiam); *Rudder*, 68 F.Supp.2d at 816; *Chicago Dist. Council*, 169 F.R.D. at 340 (citing *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987)); *E.E.O.C. v. Baby Prod. Co., Inc.*, 89 F.R.D. 129, 131 (E.D. Mich. 1981).

Lautenschlager failed to respond to the requests for admissions in a timely manner, and thus the matters for which requests for admissions were served are deemed admitted under Rule 36(a). The court must then examine whether those admissions are dispositive of the relevant issues in the motion for summary judgment. The requests for admissions relevant to the first claim are as follows:

9.  The attached document labeled as Exhibit 4 is a true and correct copy of selected content that was published as a link by you on ohiofamilyrights.info at the URL www.ohiofamilyrights.info/cps/parents_guide_to_the_system.htm and that this [sic] clicking on this link caused the user to download a copy of the document labeled as Exhibit 5.

10.  The attached document labeled as Exhibit 5 is a true and correct copy of selected content that was published as a link by you on ohiofamilyrights.info at the URL the complete file was published and accessible at www.ohiofamilyrights.info/cps/parents guide to the system-how to protect your children and rights from government intrusion.pdf.

11.  You did not author the content contained in Exhibit 5.

12.  You did not attempt to locate the copyright owner of the content contained in Exhibit 5.

13.  You did not obtain permission from the copyright owner of the content contained in Exhibit 5 before causing or permitting that content to be published at ohiofamilyrights.info/cps/reverse_miranda_letter.htm.

(R. 138-3, ¶¶ 9-13, PageID #: 1453.)

Shell has established ownership of a valid copyright to the work entitled "Parents' Guide to the System."  She registered this work with the U.S. Copyright Office on October 23, 2008 (R. 138, PageID #: 1408; R. 15, Exh. C, PageID #: 220-224), creating a presumption of the copyright's validity, which Lautenschlager has not rebutted. *Lexmark*, 387 F.3d at 534; *Hi-Tech Video*, 58 F.3d at 1095 (citing 17 U.S.C.A. § 410(c)).

Through the uncontested requests for admissions, Shell has established that Lautenschlager caused the entire work to be published on the Ohio Family Rights website, without permission to do so.  *See generally  Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) (liability for one who causes or materially contributes to the infringing conduct of another, as a 'contributory' infringer); *see generally Sony Corp. of*

*Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984) (contributory infringement).

Copying the entire work satisfies the requirement that Shell prove copying of constituent

elements of the work that are original.  *See generally Kohus*, 328 F.3d at 853, 856.

Concerning the issue of willfulness, Shell alleged that she sent a copyright infringement

notice in an August 9, 2015, email to the ICANN contact address provided for the website

"ohiofamilyrights.info" at the time of the infringement, that Lautenschlager responded, and

refused to remove the infringing content after being advised of Shell's copyright.  (R. 15, ¶¶ 86-

95; *see also* R. 138, ¶¶ 34.c.-f., PageID #: 1411-1412.)  Lautenschlager incorporated the emails

into his Answer.  (R. 40, PageID #: 342-345; *see also* R. 138, PageID #: 1410 n.6.)  Defendant's

continued infringement after notice of the infringement is evidence of willfulness.  *International

Korwin*, 855 F.2d at 380-381; *Microsoft*, 490 F. Supp. 2d at 880.

Shell has presented evidence supporting the elements of her infringement claim that

would entitle her to a directed verdict if that evidence were not controverted at trial, and

defendant Lautenschlager has not responded to the motion with controverting evidence which

would demonstrate a genuine issue of material fact.  Summary judgment is granted to Shell as to

the first claim of willful copyright infringement.

### C.  Letter to School

The second and third counts of copyright infringement concern the alleged infringement

of a work entitled "Letter to School."  (R. 15, Am.Compl., ¶¶ 98-119, 120-137, PageID #: 187-

190, 190-192.)  Shell alleges that this work was first published in the book *Profane Justice:  A

Comprehensive Guide to Asserting Your Parental Rights* (2nd ed.) ("Profane Justice"), which

was registered with the U.S. Copyright Office on December 2, 2002, registration number TX5-

677-193.  (R. 15,¶ 20, PageID #: 175; *see also* R. 15, Exh. A, PageID #: 203-204, 206; R. 138, PageID #: 1409.)  A revised version of "Letter to School"  ("Letter to School [2d version]") was published on Shell's website, www.profane-justice.org, and registered with the U.S. Copyright Office on March 15, 2004, registration number TX5-907-307.  (R. 15, Am.Compl., ¶ 21, PageID #: 175; *see also* R. 15, Exh. B, PageID #: 207-214; R. 138, PageID #: 1409.)

In the second count, Shell claims that she discovered the "Letter to School," published as "the Hatch Letter," on the AFRA Facebook page on July 9, 2014.  (R. 138, ¶ 36.b., PageID #: 1413; R. 15, ¶ 104, PageID #: 188; *see* R. 138-3, Exh. 7, PageID #: 1486-1487.)  Shell contends that Lautenschlager was an administrator of the AFRA Facebook page with the authority to monitor, approve, or remove any posts to the page at the time of the infringement.  (R. 138, PageID #: 1413; R. 15, ¶ 102, PageID #: 187-188.)

In the third count, Shell asserts that she discovered a verbatim copy of "Letter to School," under the title, "Reverse Miranda Letter," on the website "www.ohiofamilyrights.info" on August 17, 2015.  (R. 138, ¶ 38.a., PageID #: 1414; R. 15, ¶ 122, PageID #: 190; *see* R. 138-3, Exh. 1, PageID #: 1456.)  Shell contends that Lautenschlager owned the website "ohiofamilyrights.info" and was the web master for that site.  (R. 138, PageID #: 1410.)

Shell also relies on uncontested requests for admissions.  Shell notes that she served Requests for Admissions on Lautenschlager, which he did not respond to, nor did he timely object to them.  (R. 138, ¶¶ 7-8, PageID #: 1406.)  Unanswered requests for admission are automatically deemed admitted under Rule 36(a), as explained above.  *Goodson*, 2017 WL 1857270, at *2; *American Tech. Corp.*, 174 F.R.D. at 689-690.  Matters that are deemed admitted because of a party's failure to respond to a request for admissions can form the basis for

summary judgment. *Conlon*, 474 F.3d at 621; *Lovejoy*, 1996 WL 287261; *Rudder*, 68 F.Supp.2d at 816; *E.E.O.C. v. Baby Prod. Co*, 89 F.R.D. at 131.

Lautenschlager failed to respond to the request for admissions in a timely manner, and thus the matters for which requests for admissions were served are deemed admitted under Rule 36(a). The court must then examine whether those admissions are dispositive of the relevant issues in the motion for summary judgment. The requests for admissions arguably relevant to the second and third claims are as follows:

1. The attached document labeled as Exhibit 1 is a true and correct copy of selected content that was published by you on ohiofamilyrights.info at the URL ohiofamilyrights.info/cps/reverse_miranda_letter.htm.

2. You did not author the content contained in Exhibit 1.

3. You did not attempt to locate the copyright owner of the content contained in Exhibit 1.

4. You did not obtain permission from the copyright owner of the content contained in Exhibit 1 before causing or permitting that content to be published at ohiofamilyrights.info/cps/reverse_miranda_letter.htm.

* * * * * *

15. The attached document labeled as Exhibit 7 is a true and correct copy of selected content that was published on the AFR Facebook page at www.facebook.com/notes/american-family-rights-association/hatch-letter-samples/10151753932613224.

16. The attached document labeled as Exhibit 8 is a true and correct copy of the copyright notice you published pertaining to your copyrighted content.

17. You have not registered any copyrights.

18. You understand that even though an author has not registered a copyright, copyright exists at the time a work is created.

19.  You understand that a copyright owner has the exclusive right to license his work to others.

20.  You understand that under copyright law that nobody can create a derivative work of someone else's copyrighted content without the copyright owner's permission.

21.  You have no evidence to disprove Plaintiff's claim to copyright ownership of any of the documents attached as Exhibits 1, 2, 3 & 5.

22. On and as much as a year before July 9, 2015, you held two administrator positions for American Family Rights (AFR) Facebook page under two Facebook accounts.

23.  These administrator positions gave you the authority to approve or remove membership on and content posted to the AFR Facebook page.

24.  You have exercised your authority as an AFR Facebook administrator on at least one occasion.

25.  The plaintiff was denied membership and access to the AFR Facebook page.

26.  At some point after Plaintiff discovered the infringement on AFR Facebook page, membership was purged of anyone suspected of being the Plaintiff or informing Plaintiff of activities on that page.

(R. 138-3, ¶¶ 1-4, 15-26, PageID #: 1452, 1453-1454.)

Shell has established ownership of a valid copyright to the work entitled "Letter to School," both as a separate work ("Letter to School [2d version]") on her website, which was registered with the U.S. Copyright Office on March 15, 2004,  and as part of the book *Profane Justice*, which was registered with the U.S. Copyright Office on December 2, 2002.  (R. 15, Am.Compl., ¶¶ 20-21, PageID #: 175; *see also* R. 15, Exh. B, PageID #: 207-214; Exh. A, PageID #: 203-204, 206; R. 138, PageID #: 1409.)  Lautenschlager has not rebutted the presumption of the copyrights' validity.  *Lexmark*, 387 F.3d at 534; *Hi-Tech Video*, 58 F.3d at 1095 (citing 17 U.S.C.A. § 410(c)).

Through the uncontested requests for admissions, Shell has established that Lautenschlager caused the work to be published on the AFRA Facebook page, and on the Ohio Family Rights website, without permission to do so. *See generally Gershwin*, 443 F.2d at 1162. Copying the entire letter satisfies the requirement that Shell prove copying of constituent elements of the work that are original. *See generally Kohus*, 328 F.3d at 853, 856.

Concerning the issue of willfulness on the second count, Shell alleged that she sent a copyright infringement notice concerning the AFRA Facebook page in a July 9, 2014, email to former defendants Henderson, Tower, Miller, and McAllister. (R. 15, ¶¶ 104, 107-108, 110, 112-115.)  Although count two alleges infringement by Lautenschlager (R. 15, ¶ 99), Shell provides no evidence to establish the element of willfulness, namely, that Lautenschlager received notice of copyright infringement by the AFRA Facebook page, and refused to remove the infringing content. *See generally* R. 15, ¶¶ 107 (email to Henderson, Tower, Miller, and McAllister), 112-115 (McAllister responsibility for AFRA).

Concerning the issue of willfulness on the third count, Shell alleged that she sent a copyright infringement notice in an August 17, 2015, email to Lautenschlager at the ICANN contact address provided for the website "ohiofamilyrights.info" at the time of the infringement, and that Lautenschlager refused to remove the infringing content after being advised of Shell's copyright.  (R. 15, ¶¶ 122-123, 125-126, 128, 130; *see also* R. 138, ¶¶ 38.c.-g., PageID #: 1414.) However, Shell provides no evidence to establish the element of willfulness, namely, evidence that Lautenschlager received notice of copyright infringement.  Shell refers to the uncontested request for admission #14, which simply states that the Letter was published on the Ohio Family Rights website, not that any notice of copyright infringement was sent or received concerning

that particular work.  (R. 138, ¶49, PageID #: 1417, citing R. 138-3, ¶ 14 ("...replacing the content that was previously removed in response...").)  Shell also refers to the Answer, (R. 138, ¶49, PageID #: 1417, citing R. 40, ¶ 86), in which Lautenschlager refers to Shell "receiving a cease and desist from direct contact."  Neither of these references provide evidentiary support for Shell's allegation that she sent a copyright infringement notice to Lautenschlager concerning the work at issue in the third count.  *See generally International Korwin*, 855 F.2d at 380 (record contained ample evidence of eight contacts by mail); *Fontenot*, 780 F.2d at 1194 (plaintiff-movant must establish all essential elements of claim); *Microsoft*, 490 F. Supp. 2d at 880 (plaintiff submitted evidence that it sent letters to defendant).

Shell has presented evidence of copyright infringement that would entitle her to a directed verdict on the second and third counts if that evidence were not controverted at trial, and defendant Lautenschlager has not responded to the motion with controverting evidence which would demonstrate a genuine issue of material fact.  Summary judgment is granted to Shell as to the second and third claims of copyright infringement, although summary judgment is denied on those claims as to willfulness.

### III.  ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION

The fourth count of the amended complaint alleges that Lautenschlager[3] altered or removed copyright management information ("CMI") when publishing the copyrighted works, in violation of  the Digital Millennium Copyright Act ("DMCA"),

---

[3]  The fourth count in the amended complaint does not specifically name Lautenschlager, but asserts the claim against the "Defendants."  *See, e.g.*, R. 15, ¶ 139, PageID #: 192.  As stated earlier, Lautenschlager is the sole remaining defendant.

17 U.S.C. § 1202.  (R. 15, ¶¶ 138-153, PageID #: 192-195.)

In his Answer, Lautenschlager responds to the allegations contained in paragraphs 138 through 153 as follows, ". . . this Defendant shall remain mute on [them] as [these] do not directly apply to me, other than paragraph 151 . . ."  (R. 40, ¶ 87, PageID #: 347.)  Shell argues that Lautenschlager has thus admitted all the allegations of the DMCA claims.  (R. 138, ¶ 54, PageID #: 1422.)

Civil Rule 8 requires a party to "admit or deny the allegations asserted <u>against it</u> by an opposing party."  Fed. R. Civ. P. 8(b)(1)(B).  Lautenschlager implicitly denies that these allegations are asserted against him.  *See generally Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam) (*pro se* pleadings are liberally construed).  Therefore, Lautenschlager has denied the allegations because the court will not deem these allegations to be admitted simply on the basis of Lautenschlager's answer.

Section 1202(a) provides that no person "shall knowingly and with the intent to induce, enable, facilitate or conceal infringement" provide CMI that is false.  17 U.S.C. § 1202(a)(1). Section 1202(b) provides that no person, without permission to do so, shall "intentionally remove or alter any copyright management information."  17 U.S.C. § 1202(b)(1).  The statute defines the phrase "copyright management information" to mean, in relevant part,

> . . . any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, . . .
>
> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
>
> (2) The name of, and other identifying information about, the author of a work.

(3) The name of, and other identifying information about, the copyright owner of a work, including the information set forth on a notice of copyright.

\* \* \* \* \*

(6) Terms and conditions for use of the work.

17 U.S.C. § 1202(c)(1)-(3), (6).

A cause of action under Section 1202 potentially lies whenever the type of information listed in Section 1202(c) is falsified or removed, regardless of the form in which that information is conveyed. *Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 305 (3d Cir. 2011). Federal courts have held that a defendant must remove the CMI from the "body," or the "area around" the work to violate the DMCA. *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 929 (N.D. Ill. 2013) (citing cases); *see also Drauglis v. Kappa Map Grp., LLC*, 128 F. Supp. 3d 46, 60 (D.D.C. 2015) (copyright notice must be "close to" the work) (citing cases). For example, in *Kelly v. Arriba Soft Corp.*,

> . . . the court held that CMI was not removed from a picture on a website when "the only CMI available appeared on the website in the surrounding text but not in the images themselves." The court went on to state "[b]ased on the language and structure of the statute, the Court holds this provision applies only to the removal of copyright management information on a plaintiff's product or original work" – in other words, not simply printed somewhere on the website.

*Personal Keepsakes*, 975 F. Supp. 2d at 929 (discussing *Kelly v. Arriba Soft Corp.*, 77 F.Supp.2d 1116, 1122 (C.D.Cal.1999)).

Simply demonstrating copyright infringement does not in and of itself prove that a defendant has removed CMI from a work. *See, e.g.*, *Frost-Tsuji Architects v. Highway Inn, Inc.*, No. CIV. 13-00496 SOM, 2014 WL 5798282, at *5 (D. Haw. Nov. 7, 2014) (reliance on another's work alone is insufficient to support claim of removal of CIM). "An action for

removal of copyright management information requires the information to be removed from a plaintiff's product or original work." *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010) (citing cases). In *Faulkner Press,* the court found that no CMI was removed from the plaintiff's copyrighted works where information was allegedly copied into a different printed format. *Faulkner Press*, 756 F. Supp. 2d at 1359. *See also Frost-Tsuji Architects*, 2014 WL 5798282, at *5 (virtually identical floor plans could have been created by re-drawing the plaintiff's work, and not including plaintiff's CMI, but that would not involve any removal of CMI from the original work).

### A. Letter to School

The complaint alleges that defendant "knew Plaintiff claimed copyright ownership of the content contained in Letter to School under this title." (R. 15, ¶ 143, PageID #: 192.) Plaintiff further alleges that defendant changed the title of "Letter to School" to "Reverse Miranda Letter" when it was published on the Ohio Family Rights website. (R. 15, ¶ 144, PageID #: 192.)

"Plaintiff's web site Letter to School and/or CPS page" displayed a copyright notice with CMI, according to the complaint. (R. 15, ¶ 146-147, PageID #: 193.) The complaint also alleges that the book, *Profane Justice,* was published with a copyright notice and CMI on the copyright page. (R. 15, ¶ 146-147, PageID #: 193.) The aforementioned CMI, plaintiff alleges, was published as part of the original documents, but the CMI was not displayed on the Ohio Family Rights website in conjunction with the publication there of the "Letter to School" under the title "Reverse Miranda Letter." (R. 15, ¶ 148, PageID #: 193.) In addition, the complaint alleges the CMI was part of the original documents, but was not displayed on the AFRA Facebook page

with the publication there of the "Letter to School" under the title "Hatch Letter."  (R. 15, ¶ 149, PageID #: 193-194.)

The first issue is whether the allegedly infringed works displayed CMI in the body of, in the "area around," or "close to" the allegedly infringed work.  *See Drauglis*, 128 F. Supp. 3d at 60; *Personal Keepsakes*, 975 F. Supp. 2d at 929.  Shell includes exhibits of her copyrighted works with the complaint.  *See generally* R. 15.  The exhibits attached to the motion for partial judgment, on the other hand, show the alleged infringements.  *See generally* R. 138.

### 1.  2002 Letter

Shell alleges that "Letter to School" was first published in the book *Profane Justice,* copyright registration number TX5-677-193, and that Exhibit A is the relevant excerpt.  (R. 15,¶ 20, PageID #: 175; *see also* R. 15, Exh. A, PageID #: 203-204, 206.)  However, the allegedly infringed work in Exhibit A does not convey any copyright management information in the body of, in the "area around," or "close to" the allegedly infringed work.  (R. 15, Exh. A, PageID #: 206.)  Lautenschlager cannot be liable for removing CMI where none was displayed in the original work.

In addition, although Shell alleges that Lautenschlager published this work under a different title than the original ("Letter to School") (R. 15, ¶¶ 148-149, 153,  PageID #: 193-195), the allegedly infringed work in Exhibit A has no title.  (R. 15, Exh. A, PageID #: 206.)  Lautenschlager cannot be liable for altering CMI by changing the title where no title was displayed in the original work.

## 2.  2004 Revised Letter

The complaint also alleges that a revised version of "Letter to School" ("Letter to School [2d version]") was published on Shell's website, www.profane-justice.org, registration number TX5-907-307, and that Exhibit B contains the relevant excerpt.  (R. 15, Am.Compl., ¶ 21, PageID #: 175; *see also* R. 15, Exh. B, PageID #: 207-214; R. 138, PageID #: 1409.)

The allegedly infringed work in Exhibit B, entitled "Letter to School and/or CPS Agency," contains a "Copyright Notice" in the "area around," or "close to" the allegedly infringed work, specifically, at the bottom of the web page.  (R. 15, Exh. B, PageID #: 210, 213.) In the third count, Shell asserts that she discovered a verbatim copy of that work, with a changed title, "Reverse Miranda Letter," on the website "www.ohiofamilyrights.info." (R. 138, ¶ 38.a., PageID #: 1414; R. 15, ¶ 122, PageID #: 190; *see* R. 138-3, Exh. 1, PageID #: 1456.) Lautenschlager owned the website "ohiofamilyrights.info" and was the web master for that site. (R. 138, PageID #: 1410.)  Thus, Shell has established, without opposition, that Lautenschlager removed CMI from her copyrighted work entitled "Letter to School and/or CPS Agency."

## B.  Letter to Lawyer

The complaint states that "Plaintiff incorporates paragraphs 148-155, 157-158 as equally applying to Plaintiff's Letter to Your Attorney that was published on ohiofamilyrights.info pertaining to the copyright management information originally published with this document by Plaintiff on her web site."  (R. 15, Am.Compl., ¶ 150, PageID #: 194.)  The specific paragraph numbers referenced appear to be incorrect, as these paragraphs in the amended complaint span several different topics, and incorporate by reference paragraphs that are pled later in the

complaint.[4]  Applying a liberal construction to the complaint, *see generally Haines*, 404 U.S. 519, the court concludes that Shell intended to repeat her allegations concerning the Letter to School to the Letter to Your Attorney.

Shell alleges that this latter work was published on her website, www.profane-justice.org, registered with the U.S. Copyright Office on March 15, 2004, registration number TX5-907-307, and that Exhibit B contains the relevant excerpt.  (R. 15, Am.Compl., ¶ 22, PageID #: 175; *see also* R. 15, Exh. B, PageID #: 207-209, 215-219; R. 138, PageID #: 1409-1410.)  However, the work in Exhibit B does not convey any copyright management information in the body of, in the "area around," or "close to" the allegedly infringed work.  (R. 15, Exh. B, PageID #: 215-219.) Lautenschlager cannot be liable for removing or altering CMI when none was displayed in the original work.

## C.  Parents' Guide to the System

Shell alleges that the original work, a collection of proprietary unpublished documents which formed the basis of the derivative work entitled "Parents' Guide to the System," was registered with the U.S. Copyright Office, registration number TXu001588498, and that Exhibit C is the first page of the deposit excerpt.  (R. 15, ¶ 23, PageID #: 175; *see also* R. 15, Exh. C, PageID #: 220-224; R. 138, PageID #: 1408.)  Exhibit C evidences the CMI which Shell asserts over the derivative work.  (R. 15, Exh. C, PageID #: 224.)  Shell has established, without opposition, that the "Parents' Guide" displayed CMI.

---

[4]  It is unusual, for example, for paragraph 150 of Count Four, as here, to incorporate a subsequent paragraph 158, which is found in the middle of Count Six.

Shell asserts that she discovered the entire content of "Parents' Guide" reproduced via a link on the website, owned by Lautenschlager, "www.ohiofamilyrights.info" on August 9, 2015. (R. 138, ¶¶ 27, 34.a., PageID #: 1410-1411; R. 15, ¶ 86, PageID #: 186; *see* R. 138-3, Exh. 4-5, PageID #: 1461-1484.) Shell's CMI does not appear with the work on the link from the Ohio Family Rights website. *See* R. 138 ¶ 57, PageID #: 1423; R. 138-3, Exh. 4-5, PageID #: 1461-1484; R. 40, PageID #: 345 (reproducing Shell email of August 9, 2015, asserting copyright infringement). Thus, Shell has established, without opposition, that Lautenschlager removed the CMI from her copyrighted work entitled "Parents' Guide to the System."

## D.  Summary of Count Four

Summary judgment is granted in part and denied in part as to the fourth claim alleging violations of DMCA. Shell has not presented evidence supporting the elements of her DMCA claim that would entitle her to a directed verdict if that evidence were not controverted at trial, as to the "Letter to School" published in the book *Profane Justice*, and as to the "Letter to Your Attorney." The motion for summary judgment on the DMCA claim regarding these works is denied.

Shell has presented evidence supporting the elements of her DMCA claims concerning her copyrighted work, "Letter to School and/or CPS Agency," published on Shell's website, www.profane-justice.org, and concerning the "Parents' Guide to the System." The evidence would entitle Shell to a directed verdict if that evidence were not controverted at trial, and defendant Lautenschlager has not responded to the motion with controverting evidence that would demonstrate a genuine issue of material fact. The motion for summary judgment on the DMCA claim regarding these works is granted.

IV.  COUNT FIVE

The fifth count of the amended complaint alleges a violation of the DMCA, 17 U.S.C. § 1201(a)(1)(A), regarding the password protection on Shell's website for the work, Letter to Your Attorney.  (R. 15, ¶ 155, PageID #: 196.)  Shell alleges that access to the document online was password-protected and required agreement to terms of use in order to access that document. Shell alleges that: "Anti-copy protections on this document had to be circumvented to obtain and publish a copy of this document in violation of 17 U.S.C. § 1201(a)(1)(A)."  (R. 15, ¶ 155, PageID #: 196; *see also* R. 138, ¶ 65, PageID #: 1425.)  Shell provides no evidence in support of this claim, other than to assert that Lautenschlager "made no response to this averment in his Answer [R. 40], and has therefore admitted these facts."  (R. 138, ¶ 64, PageID #: 1425.)

Shell is correct that Lautenschlager's answer provides no response to this allegation.  *See generally* R. 40, ¶¶ 86-91, PageID #: 346-348 (addressing ¶¶ 120-137, 138-153, 157-172, 173-179, and 180-187 of the amended complaint, but not addressing ¶ 155).  Civil Rule 8 provides, in relevant part:  "An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."  Fed. R. Civ. P. 8(b)(6). Lautenschlager's responsive pleading provided no specific or general denial of the averments in Count Five of the Amended Complaint.  The averments in Count Five are thus deemed admitted, and summary judgment is granted on this claim.

## V.  COUNT SIX

Count Six applied only to defendant 1&1 Internet Inc., which has been dismissed.  (R. 31.)

## VI.  COUNT SEVEN

Count Seven applied only to defendant Rosalind McAllister, who has been dismissed. (R. 83.)

## VIII.  CONCLUSION

The motion for partial summary judgment (R. 138) is GRANTED in part, and DENIED in part.  Regarding the first three counts alleging copyright infringement, Shell has presented evidence supporting the elements of her claims that would entitle her to a directed verdict at trial, and defendant Lautenschlager has not responded to the motion with controverting evidence that would demonstrate a genuine issue of material fact.  Summary judgment is granted to Shell regarding those first three claims.  Summary judgment is granted to Shell on the first claim of willful infringement, but denied regarding the willfulness claims in connection with counts two and three.

Summary judgment is granted in part and denied in part regarding count four alleging violations of DMCA.  Shell has not presented sufficient evidence supporting the elements of the DMCA claim and summary judgment is denied regarding the "Letter to School" published in the book *Profane Justice*, and the "Letter to Your Attorney."  Shell has presented evidence supporting the elements of her DMCA claims concerning the copyrighted work, "Letter to

School and/or CPS Agency," published on Shell's website, www.profane-justice.org, and concerning the "Parents' Guide to the System," that would entitle her to a directed verdict, and defendant Lautenschlager has not responded to the motion with controverting evidence that would demonstrate a genuine issue of material fact. The motion for summary judgment on the DMCA claim is granted regarding these two works.

Count Five is deemed admitted, and summary judgment is granted to Shell on this claim. Count Six applied only to defendant 1&1 Internet Inc., which has been dismissed. (R. 31.) Count Seven applied only to defendant Rosalind McAllister, who has been dismissed. (R. 83.)

The motion for partial summary judgment (R. 138) is GRANTED in part, and DENIED in part, as set forth above.

<u>s/ David A. Ruiz</u>
David A. Ruiz
United States Magistrate Judge


Date:   <u>October 31, 2017</u>